# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LORETT MAY JULIAN,<br><br>    Plaintiff,<br><br> vs.<br><br>COMMISSIONER OF SOCIAL<br><br>SECURITY,<br><br>    Defendant. | No. 1:16-cv-03064-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

  BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion (ECF No. 14) and denies Defendant's motion (ECF No. 15).

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Plaintiff protectively applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on October 31, 2012, alleging an onset disability date of March 1, 2007. Tr. 204-07. The applications were denied initially, Tr. 75-93, and on reconsideration, Tr. 94-117. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 18, 2014. Tr. 37-74. At the hearing, Plaintiff amended the alleged onset date to October 31, 2012, the

application date. Tr. 39-40.[1] On August 5, 2014, the ALJ denied Plaintiff's claim. Tr. 19-36.

At the outset, the ALJ determined that the date last insured is June 30, 2012. Tr. 24. At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 1, 2007, the alleged onset date. Tr. 24.[2] At step two, the ALJ found Plaintiff has the following severe impairments: fibromyalgia, degenerative disc disease, other unspecified arthropathies, and obesity. Tr. 25. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 25. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following additional limitations:

> This individual can lift and/or carry 20 lbs. occasionally and 10 lbs. frequently, can stand and/or walk (with normal breaks) for a total of about 4 hours in an 8-hour workday, and can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. She can frequently

_____

[1] The date last insured is June 30, 2012. Tr. 39. At the hearing, Plaintiff amended her alleged onset date to October 31, 2012, the application date, and acknowledged that such amendment would eliminate the Title II application for disability insurance benefits. Tr. 39-40.

[2] Despite Plaintiff amending her alleged onset date to October 31, 2012, the application date, the ALJ referred to the original alleged onset date in the decision.

balance and stoop, occasionally climb ramp[s] and stairs, kneel, crouch and crawl. There can be occasional overhead reaching. She should avoid concentrated exposure to hazards (dangerous machinery, unprotected heights, etc.), extreme cold and vibrations. She needs to periodically alternate sitting with standing which can be accomplished by any work task requiring such shifts or can be done in either position temporarily or longer.

Tr. 25-26.

At step four, the ALJ found Plaintiff is able to perform her past relevant work as a dispatcher, motor vehicle; escort; and telephone operator. Tr. 29. Alternatively, at step five, after considering the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cashier II. Tr. 30. Thus, the ALJ concluded Plaintiff has not been under a disability since March 1, 2007, the alleged onset date. Tr. 31.

On February 19, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 1-5, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly discredited Plaintiff's symptom claims;

1        2.      Whether the ALJ properly weighed the medical opinion evidence; and

2        3.      Whether the ALJ properly weighed the lay testimony.

3    ECF No. 14 at 7, 19.

**DISCUSSION**

**A. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 14 at 7-13.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *Molina*, 674 F.3d at 1112.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ failed to provide specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible." Tr. 26.

*1. Daily Activities*

First, the ALJ found that Plaintiff's "self-reported activities reflect some degree of symptom exaggeration, and that she is not as functionally limited as alleged." Tr. 26. A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) the claimant "is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

Here, the ALJ noted that "contrary to the allegation of needing her daughter's help in basic daily activities, including cooking, dressing and using the bathroom, [Plaintiff] stated that she has only moved in with her daughter a year ago, or approximately 2013, and before then she was living in a tent next to a river." Tr. 26-27. The ALJ noted that her amended alleged onset date is October 31, 2012, which means that Plaintiff "managed to take care of her own activities of

daily living for over a year while living outdoors, after her alleged disability

began." Tr. 27.  The ALJ failed to identify any specific activities Plaintiff engaged

in while homeless living in a tent and further failed to demonstrate how these

activities contradicted Plaintiff's other testimony or that she was able to spend a

substantial part of her day engaged in these activities and that these activities are

transferable to a work setting.

Next, the ALJ noted that Plaintiff alleged disabling pain from fibromyalgia,

to an extent that she sustains falls on a regular basis.  Tr. 27.  The ALJ then cited

Plaintiff's testimony that (1) Plaintiff drove the car 15 miles to go grocery

shopping within the 60 days prior to the hearing, and (2) went grocery shopping

the prior weekend.  Tr. 27.  The ALJ then concluded that Plaintiff not reporting

any falls during those trips was a basis for finding that Plaintiff is not as disabled

as she alleged.  Tr. 27.  The fact that Plaintiff did not fall during these two specific

trips does not undermine the documentation of other falls she suffered and is not a

basis to find that her daily activities discredit her symptom testimony.

Next, the ALJ noted that although "[Plaintiff] described that her daughter

does everything and [Plaintiff] contributes nothing to the household, she did testify

that she can do some chores on good days including cleaning out her daughter's

car." Tr. 27.  The ALJ criticized Plaintiff for attempting to clean her daughter's

car the day before the hearing, which she was unable to do, noting that "[i]t is not

clear why [Plaintiff] would knowingly attempt to do such an activity that allegedly causes so much distress." Tr. 27. The fact that Plaintiff attempted an activity and failed is not evidence of her daily activities being greater than her claimed limitations. Moreover, the Ninth Circuit has held that a claimant's ability to assist with some household chores is not determinative of disability. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).

The ALJ failed to demonstrate how Plaintiff's daily activities contradicted her other testimony, or that she was able to spend a substantial part of her day engaged in these activities and that these activities are transferable to a work setting. Therefore, this reason fails to meet the specific, clear and convincing standard.

### 2. Inconsistent Statements

Next, the ALJ found that "inconsistent statements erode[d] [Plaintiff's] credibility." Tr. 28. In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (1996). One appropriate consideration is "inconsistencies in the claimant's testimony or between [her] testimony and [her] conduct." *Thomas*, 278 F.3d at 958-59.

The ALJ first noted, without citation to the record, that Plaintiff complained of concentration issues, but did not give examples of such limitations, including at

the hearing.  Tr. 27.  The Court finds that failing to provide examples does not

generate a conflicting statement sufficient to find Plaintiff not credible.  Next,

without citation to the record, the ALJ found that Plaintiff gave inconsistent

statements related to her driving history and whether she had a driver's license.  Tr.

27.  The Court has reviewed the record and has not identified any inconsistencies

in this area.  The ALJ noted that Plaintiff stated "she goes to the grocery store to

shop but only does so when accompanied by her daughter or someone else."  Tr.

27.  The ALJ then commented, "[h]owever, [Plaintiff] also stated that she drives to

the store and the daughter is in the car with her."  Tr. 27.  The ALJ did not

articulate any inconsistency and the Court finds no discernable inconsistency in

these statements.  Next, the ALJ noted, without citation to the record, that Plaintiff

"indicated that she does not drive or have a license, but her testimony was different

at the hearing, where she stated that she last drove to the grocery store 'last

Saturday or Sunday.'"  Tr. 27.  Here, the Court has found no indication in the

record where Plaintiff stated she did not drive or have a driver's license.  Finally,

the ALJ noted that "[i]n 2013 [Plaintiff] indicated that she could read and ride a

bike, take walks with her husband and volunteer at the soup kitchen," yet at the

hearing testified that she had performed no favors or unpaid tasks in the past two

years.  Tr. 28.  The Commissioner concedes that there is no evidence in the record

to support the ALJ's statement that Plaintiff had indicated she could read, ride a

bike, take walks with her husband and volunteer at a soup kitchen.  ECF No. 15 at

9 n.2.  Thus, this asserted inconsistency is not supported by the record.  The Court

finds insufficient support in the record for the alleged inconsistencies.  This does

not amount to a clear and convincing reason to discredit Plaintiff.

**B. Medical Opinion Evidence**

Next, Plaintiff faults the ALJ for discounting the medical opinion of Mary

Pellicer, M.D.  ECF No. 14 at 13-19.[3]

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

_____

[3] Plaintiff notes that the ALJ gave "very little weight" to treating providers Dr.

Bethel and Dr. Seltzer.  ECF No. 14 at 14.  However, Plaintiff presented no

argument related to these medical providers.  The Court will not ordinarily

consider matters that are not specifically and distinctly argued and may refuse to

address claims that were only argued in passing or that were bare assertions with

no supporting argument.  *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626

F.3d 483, 487-88 (9th Cir. 2010); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533

F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining issue not argued with specificity

may not be considered by the Court).

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."
*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Security*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-31).

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions; he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

Dr. Pellicer examined Plaintiff on January 3, 2013. Tr. 381-88. Dr. Pellicer opined that Plaintiff is able to stand and walk two hours in an eight-hour day; to sit for about six hours cumulatively in an eight-hour day; and to lift and carry less than 10 pounds occasionally. Tr. 386. The ALJ gave Dr. Pellicer's opinion less weight. Tr. 27. Because Dr. Pellicer's opinion was contradicted by Dr. Merrill, Tr. 397, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ rejected Dr. Pellicer's limitations because they were based on Plaintiff's discredited subjective reports. Tr. 127. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604. The Court found that the ALJ improperly rejected Plaintiff's symptom

claims, *see supra*, thus, this was not a specific and legitimate reason to reject Dr. Pellicer's opinion.

Second, the ALJ rejected Dr. Pellicer's opinions because of the discrepancy between Plaintiff's symptom claims and her daily activities. An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan*, 169 F.3d at 601-02. The ALJ set forth one example to support this conclusion. Specifically, the ALJ cited Dr. Pellicer's notation that Plaintiff "presented alone after driving herself to the appointment," which the ALJ noted, with no citation to the record, that "Dr. Pellicer did not appear to be aware of [Plaintiff's] statement at another time that she has been too impaired to drive." Tr. 27. The Court has been unable to locate such citation in the record. Thus, this reason is not supported by the record. Moreover, even if supported in the record, Dr. Pellicer was aware Plaintiff was able to drive; thus, Dr. Pellicer was aware of her actual functioning. Tr. 383, 386. This reason, even if supported in the record, does not demonstrate that Dr. Pellicer was unaware of Plaintiff's actual functioning in formulating her limitations, nor demonstrate that Dr. Pellicer's assessed limitations are inconsistent with Plaintiff's actual functioning.

Third, the ALJ discredited Dr. Pellicer's opinion because she relied on medical records generated prior to the amended alleged onset date. Tr. 27. Social security regulations direct the review of medical records for 12 months prior to the

date of the applications, 20 C.F.R. § 416.912(d)(2) (2015),[4] which the

Commissioner concedes. ECF No. 15 at 15. Here, Dr. Pellicer relied on

emergency room records from February 2, 2012 and October 13, 2012, which were

approximately eight months and two weeks, respectively, prior to the application

date and amended alleged onset date. Thus, the ALJ erred in rejecting Dr.

Pellicer's opinion due to her reliance on these records.[5]

      Next, the ALJ rejected Dr. Pellicer's assessed limitations because they were

inconsistent with the emergency room medical records. Tr. 27. An opinion may

be rejected if it is unsupported by the medical record. *Bray*, 554 F.3d at 1228;

*Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). As an

_____

[4] As of March 27, 2017, 20 C.F.R. § 416.912 was amended. The relevant language
is currently set forth in 20 C.F.R. § 416.912(b)(1) (2017).

[5] The Court notes that Dr. Merrill, whose opinion the ALJ afforded "significant
weight," Tr. 28, relied on imaging that was performed in 2010, two years prior to
the amended alleged onset date, and also reviewed the same emergency room
records at issue, in formulating his opinions. Tr. 392. It is inconsistent for the ALJ
to afford one medical provider's opinions less weight for relying on pre-onset date
records, but afford another medical provider's opinions significant weight when he
reviewed and relied on substantially the same records, as well as older records.

example, the ALJ noted that Plaintiff was "adequately functional by the time of discharge." Tr. 27. Specifically, the ALJ noted that on the February 3, 2012 emergency room visit, the notes indicate Plaintiff was "discharged to home, ambulating without assistance, driving self, unaccompanied." Tr. 27. As an initial matter, the mere fact that a claimant was discharged from the emergency department is not evidence of non-disability. Moreover, the discharge records indicate that Plaintiff was discharged with a knee immobilizer[6] and crutches. Tr. 345.

Next, the ALJ rejected Dr. Pellicer's assessed limitations because she acknowledged the diagnosis of fibromyalgia as alleged by Plaintiff, but did not test for the trigger points when she performed the physical examination. Tr. 27. Here, as noted by Plaintiff, Dr. Pellicer's clinical impression was "chronic pain syndrome possibly secondary to fibromyalgia, but may also be due to poor pain tolerance due to sleep deprivation." Tr. 386. Moreover, there is no dispute on this record that Plaintiff suffers from fibromyalgia (*see, e.g.* Tr. 299, 391-94); in fact, the ALJ

---

[6] The attending doctor instructed that she be provided a knee immobilizer. Tr. 345. However, the hospital did not have one available to fit Plaintiff appropriately, so she given a prescription for one. Tr. 346.

found it to be a severe impairment. Tr. 25. Failure to test for trigger points, alone, is not a specific and legitimate reason to reject Dr. Pellicer's assessed limitations.

Given this record, the Court finds that the ALJ did not provide specific and legitimate reasons to reject Dr. Pellicer's opinion.

**C. Lay Witness Testimony**

Plaintiff challenges the ALJ's determination to give little weight to third party statements. ECF No. 14 at 19.

Lay witness testimony cannot establish the existence of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). To discount evidence from lay witnesses, an ALJ must give reasons "germane" to each witness. *Dodrill*, 12 F.3d at 919.

Here, Plaintiff's argument consists of the following statement: "the ALJ did not provide germane rejections for the lay witness statements, which verify and support [Plaintiff's] disability claim." ECF No. 14 at 19. Plaintiff did not identify any specific lay witness testimony at issue and how the rejected testimony bore on

the relevant issue. Plaintiff did not address any of the reasons articulated by the ALJ for rejecting the lay witness testimony. *See* Tr. 29. The Court will not ordinarily consider matters that are not specifically and distinctly argued and may refuse to address claims that were only argued in passing or that were bare assertions with no supporting argument. *Christian Legal Soc.*, 626 F.3d at 487-88; *Carmickle*, 533 F.3d at 1161 n.2. Considering the claim is being remanded for the ALJ to readdress Plaintiff's credibility and the weight afforded to the medical opinion evidence, the ALJ is also instructed to readdress the lay witness testimony.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved

before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to properly determine Plaintiff's credibility regarding her symptom reporting, properly consider the medical opinions, properly address the opinions of lay witnesses, and formulate a new RFC. The ALJ will also need to supplement the record with any outstanding medical evidence and potentially elicit testimony from a medical or vocational expert.

## CONCLUSION

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 14) is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's motion for summary judgment (ECF No. 15) is **DENIED.**

3. Application for attorney fees may be filed by separate motion.

1     The District Court Executive is directed to file this Order, enter

2  **JUDGMENT FOR THE PLAINTIFF**, provide copies to counsel, and **CLOSE**

3  THE FILE.

4        DATED this 11th day of July, 2017.

5

6                              *s/Mary K. Dimke*
                            MARY K. DIMKE
7                           UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20